UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

<u>NOT FOR PUBLICATION</u>

| | |
|---|---|
| DAVID CONNOLLY,<br><br>    Plaintiff,<br><br>  v.<br><br>RICHARD ARROYO, et al.,<br><br>    Defendants. | <br><br><br><br>Civ. Action No. 06-4684 (KSH)<br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

In this § 1983 action, plaintiff David Connolly ("Connolly"), proceeding <u>pro se</u>, alleges that his parole officer and various members of the New Jersey State Parole Board (the "Board") violated his constitutional rights by conducting an unlawful and unfair parole revocation proceeding. Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, the motion is **granted**.

**I. BACKGROUND**

The following factual background is obtained from the complaint and documents attached to it.[1] Because the complaint and accompanying documents span more than two hundred pages, the Court recites only those facts necessary to decide defendants' motion to dismiss.

---

[1] Plaintiff attached four documents to his 74 page complaint: (1) a 19 page document entitled "Procedural History" (docket entry # 1.3); (2) a 24 page document entitled "Statement of Claims" (docket entry # 1.4); (3) a 55 page document entitled "Plaintiff's Appendix" (docket entry # 1.6); and (4) an application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> (docket entry # 1.5). In deciding this motion, the Court will consider the complaint, Procedural History, Statement of Claims, and Plaintiff's Appendix because they were attached to and "explicitly relied upon in the complaint." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>see also</u> <u>Lum v. Bank of Am.</u>, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.")

1

On May 18, 2004, Connolly was released on parole from South Woods State Prison, but a warrant was issued for his arrest in February, 2005 for failure to report as directed and failure to obtain approval to change residences. Connolly was taken into custody on April 12, 2005 and appeared for a parole violation hearing before officer Andrew Demko ("Demko") on May 5, 2005, at which Richard Arroyo ("Arroyo"), Connolly's parole officer, testified. In a written report dated May 31, 2005, Demko sustained the violations charged against Connolly and recommended that the Board revoke his parole and establish a future eligibility term ("FET") of twelve months. On June 1, 2005, a panel of the Board adopted Demko's recommendation.

Connolly filed an administrative appeal of the Board's decision, claiming that Arroyo and Demko had already decided to recommend revoking his parole prior to the hearing. Connolly also claimed that Arroyo's conduct at the violation hearing violated the Board's Code of Conduct. However, the Board's Appeals Unit was unable to review the May 5, 2005 hearing because the Board lost the tape recording of the proceeding. In a letter dated November 4, 2005, Edward Oskay ("Oskay"), Chief of the Board's Appeals Unit, informed Connolly that under the circumstances, the Board's June 1, 2005 decision would be vacated, and it would conduct a <u>de novo</u> final parole revocation hearing. Connolly remained in custody pending a second hearing, which took place the next month, on December 21, 2005.

The Board once again decided to revoke Connolly's parole and establish a FET of twelve months. Connolly filed another administrative appeal. In a letter dated May 17, 2006, Oskay advised Connolly that the Board's Appeals Unit had again decided to vacate the Board's decision to revoke his parole but did not specify the reasons behind the decision to vacate. Oskay's letter stated that the Board would schedule a third final parole revocation hearing as soon as possible. Connolly remained in custody.

On September 29, 2006, before a third revocation hearing took place, Connolly filed this federal lawsuit, claiming violations of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. The complaint alleges that Arroyo intentionally sabotaged Connolly's revocation hearing by, inter alia, providing false information at the revocation hearing, "[p]readjudicating Plaintiff with Hearing Officer Demko prior to receiving his Statutory Hearing, refusal to contact Plaintiff's Witnesses, and deliberate withholding of Plaintiff's Hearing Package . . . ." (Compl. at 6, ¶ 1.) The complaint asserts claims against various Board employees for their failure to train and supervise Arroyo and their failure to conduct an adequate investigation into Arroyo's misconduct. The complaint also names several employees of the Board's central office as defendants, claiming that they are vicariously liable for the actions of Board employees.

Connolly was released from prison on March 22, 2007, having completed the maximum prison term for his underlying conviction (burglary). (Final Discharge, docket entry # 28.) Connolly never received a third revocation hearing prior to maxing out, and the parties dispute who is to blame for the delay.

Defendants have moved to dismiss his complaint under Fed. R. Civ. P. 12(b)(6), arguing that Heck v. Humphrey, 512 U.S. 477 (1994), and Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006), preclude Connolly from obtaining § 1983 relief because he did not receive a "favorable termination" of the Board's decision to revoke his parole before filing suit and his success in this § 1983 action would necessarily demonstrate that his parole had been unlawfully revoked.

**II.     STANDARD**

In deciding a motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in the light most favorable to the non-moving party. Worldcom,

Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003). To survive a motion to dismiss, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1006 (7th Cir. 1984)). However, pro se litigants are given "greater leeway where they have not followed the technical rules of pleading and procedure." Tabron v. Grace, 6 F.3d 147, 153 n.2 (3d Cir. 1993).

**III.   ANALYSIS**

Defendants correctly argue that Heck and Williams are critical to the determination of whether Connolly is barred from seeking relief pursuant to § 1983.

Roy Heck was convicted of voluntary manslaughter for the death of his wife and was sentenced to 15 years in prison. Heck, 512 U.S. at 478. While a direct appeal of his conviction was still pending, Heck filed a § 1983 claim against two prosecutors and a police investigator involved in his case. Id. at 478–79. The complaint alleged that the defendants conducted an unlawful investigation, destroyed exculpatory evidence, and caused "'an illegal and unlawful voice identification procedure' to be used at [his] trial." Id. at 479. Heck sought money damages, but did not request injunctive relief or his release from custody. Connolly, likewise, has not sought release from custody or injunctive relief in this lawsuit and emphasizes this point on page 2 of the complaint. See infra at 7.

The district court dismissed the action, concluding that the complaint raised issues "directly implicat[ing] the legality of [Heck's] confinement." Id. While Heck's appeal to the Seventh Circuit was pending, several procedural events occurred: the Indiana Supreme Court upheld his voluntary manslaughter conviction on direct appeal; a federal district court dismissed

4

his first habeas petition because it contained unexhausted claims; his second habeas petition was denied; and the Seventh Circuit affirmed the denial of that second habeas petition. Thereafter, the Seventh Circuit affirmed the dismissal of Heck's § 1983 claim. Heck v. Humphrey, 997 F.2d 355 (7th Cir. 1993).

The Supreme Court affirmed the dismissal of Heck's § 1983 claim. Heck, 512 U.S. at 490. Writing for the majority, Justice Scalia declared that the

> hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.
>
> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87. The Court clarified the favorable termination rule in Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005), where it expressly stated that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Thus, it is well established that an individual alleging an unlawful conviction or term of imprisonment must receive a favorable termination of his/her criminal conviction or sentence before proceeding with a § 1983 claim.

In Williams, the Third Circuit extended the favorable termination rule to § 1983 suits alleging unlawful revocation of parole. 453 F.3d at 177–78. There, plaintiff John Williams was

arrested within a year of being released on parole for failing to obtain permission to change employment and for failing to register as required by Megan's law.  Id. at 175.  The New Jersey State Parole Board held a hearing and revoked Williams's parole, despite the recommendation of his parole officer that parole be continued.  Id.  The Board evaluated Williams for parole again the following year, and denied him parole.  Id.

Williams filed suit pursuant to § 1983 claiming that various constitutional violations occurred during these parole revocation proceedings.  Id. at 175–76.  Relying on Heck, the district court dismissed the claim and the Third Circuit affirmed.  In so holding, the Third Circuit joined the First and Ninth Circuits in ruling that the favorable termination rule applies to § 1983 plaintiffs alleging unlawful revocation of their parole.  Id. at 177 (citing White v. Gittens, 121 F.3d 803, 807 (1st Cir. 1997) ("A favorable decision in the § 1983 proceeding would necessarily call into question the validity of the state's decree revoking his parole and ordering him back to prison."); Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997) ("Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits.")).  The court declared that in such cases, the "threshold question becomes whether [the plaintiff's] success on his § 1983 action would 'necessarily demonstrate' the invalidity of the Parole Board's decision to revoke his parole . . . ."  Id.

Heck, Wilkinson, and Williams all stand for the proposition that a § 1983 complaint must be dismissed if success in the case would necessarily call into question the validity of the plaintiff's continued confinement (regardless of whether the confinement is the direct result of a conviction or parole revocation).  Relying on these cases, defendants argue that complaint must

be dismissed because Connolly's claims directly implicate the validity of his confinement. The Court agrees.

Connolly has attempted to distance himself from the relevant precedent by arguing that his situation is distinguishable because the two decisions revoking his parole were vacated and he was released from prison prior to receiving a third hearing. While this argument is facially appealing, allowing the claim to proceed would nonetheless violate Heck's prohibition on claims "necessarily requir[ing] the plaintiff to prove the unlawfulness of his . . . confinement." Heck, 512 U.S. at 486. At the time this suit commenced, Connolly was in custody and his parole revocation process was still ongoing. Apparently seeking to plead his way around Heck, Connolly goes out of his way to say that he is (was) "**NOT** seeking to reduce the length or duration of confinement and is **NOT** seeking a speedier release from State Custody." (Compl. at 2 (emphasis in original)). This bald assertion, however, belies the reality that his success in this case would necessarily require a finding that the defendants' unlawful actions resulted in his being wrongly imprisoned.

Heck and its progeny serve to prevent prisoners from using § 1983 as a grievance process unless a competent judicial body has already ruled favorably. No such finding has been made here and Connolly's complaint must be dismissed under well-established precedent. The Ninth Circuit has recognized in Butterfield that "[f]ew things implicate the validity of continued confinement more directly than the allegedly improper denial of parole. This is true whether that denial is alleged to be improper based upon procedural defects in the parole hearing or upon allegations that parole was improperly denied on the merits." 120 F.3d at 1024. Here, Connolly makes very clear that he is "challeng[ing] the State Process which was employed to deprive him

of his liberty," (Pl.'s Opp. Br., docket entry # 22, at 2), and such a claim is clearly not cognizable in federal court.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **granted**. An appropriate order will be entered.

Dated: August 23, 2007                              /s/ Katharine S. Hayden

                                                    Katharine S. Hayden, U.S.D.J.